THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK
COMMITTEE ON PROFESSIONAL ETHICS

**FORMAL OPINION 2017-6:** Issuing a subpoena to a current client

**TOPIC**: Conflict of interest when a party's lawyer in a civil lawsuit may need to issue a subpoena to another current client.

**DIGEST:** Subpoenaing a current client on behalf of another current client ordinarily entails a conflict of interest that requires that the attorney obtain informed written consent from both clients. Therefore, an attorney should run a conflict check prior to preparing and issuing a subpoena. Counsel should consider whether limiting the scope of a representation or obtaining informed consent in advance could address any conflict issues at the outset of a representation; in the event these prophylactic measures cannot avoid the conflict, the prospective representation must be declined. Finally, if the need to subpoena a current client arises during the course of a pre-existing attorney-client relationship, counsel may have to withdraw from the representation or make arrangements for the retention of conflicts counsel to conduct the discovery, consistent with the restrictions on the interactions the attorney may have with conflicts counsel.

**RULES**: 1.0(f); 1.7; 1.16

**QUESTION**: What ethical restrictions apply when a party's lawyer in a civil lawsuit issues a subpoena to another current client or may need to do so?

**OPINION:**

### I. Introduction

This Opinion addresses the applicable ethical considerations when a party's lawyer in a civil lawsuit needs to subpoena a third party whom the lawyer represents in an unrelated matter. The question may arise before undertaking the representation or soon afterwards, if the lawyer then anticipates that a current client who is not a party to the lawsuit may possess relevant evidence; alternatively, the question may first arise during the pre-trial discovery phase of the lawsuit or thereafter, including during a trial. The question is whether the need to issue a subpoena to a current client for documents or testimony that may be relevant to the lawsuit gives rise to a conflict of interest under Rule 1.7 of the New York Rules of Professional Conduct, and, if so, what obligations and restrictions arise.

### II. Issuing a Subpoena to a Current Client Ordinarily Entails a Conflict of Interest Under Rule 1.7

A lawyer has a conflict of interest under Rule 1.7(a) "if a reasonable lawyer would conclude that either (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Rule 1.0(f) defines "differing interests" to include "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest."

"In general, a conflict of interest exists . . . when a lawyer represents one client in a matter that is directly adverse to a second client whom the lawyer or the lawyer's firm represents in another matter, even if the two matters are unrelated. The most typical example is when a lawyer represents a client in litigation against a party whom the lawyer's firm represents in another matter." NYCBA Formal Op. 2005-2 (2005) (citing *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976)); *accord* NYCBA Formal Op. 2001-3 (2001) ("In New York . . . a lawyer is precluded, at least prima facie, from representing one client in a matter directly adverse to another current client").[1]

Rule 1.7(b) provides that a lawyer may represent a client despite a concurrent conflict if the lawyer "reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," and each affected client gives informed consent, confirmed in writing.[2] Ordinarily, Rule 1.7(b) permits a lawyer to represent a party that is directly adverse to another current client as long as the respective clients give informed consent. Absent the clients' informed consent, however, the duty to avoid the representation of differing interests prohibits a lawyer from advocating in one matter against another client whom the lawyer represents in another matter, even where the matters are unrelated. Rule 1.7 cmt. 6.

The initial question is whether, and at what point, the need to subpoena a client is directly adverse to that client and therefore gives rise to the representation of "differing interests" under Rule 1.7(a). Different authorities have adopted somewhat different views on this question.

Some prior opinions have taken the view that seeking discovery from a current client will "frequently" or "likely" result in a conflict of interest. For example, ABA Formal Op. 92-367 (Oct. 16, 1992) considered whether a lawyer may cross-examine a doctor client who had been appointed, after a litigation commenced, as a testifying expert for the other side in a litigation. The ABA concluded that "[a] lawyer who in the course of representing a client examines another client as an adverse witness in a matter unrelated to the lawyer's representation of the other client, or conducts third party discovery of the client in such a matter, will *likely* face a conflict that is disqualifying in the absence of appropriate client consent." (emphasis added) Similarly, in NYCBA Formal Op. 2001-3 (2001), this Committee noted that taking discovery, whether testimonial or documentary, from a current client will "frequently" result in a conflict,[3] but that

---

[1] New York's "differing interests" standard presents a different formulation of the concurrent conflict of interest standard than the standard set forth in the American Bar Association's ("ABA") Model Rules of Professional Conduct. Rule 1.7(a) of the ABA's Model Rules expressly provides that "a lawyer shall not represent a client if . . . the representation of one client will be *directly adverse* to another client" (emphasis added). New York's "differing interests" language implicitly incorporates the "directly adverse" standard. NYCBA Formal Op. 2001-3 (2001) ("In New York . . . a lawyer is precluded, at least prima facie, from representing one client in a matter directly adverse to another current client").

[2] Additionally, Rule 1.7(b) requires that the concurrent representation is not prohibited by law and does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

[3] Opinion 2001-3, which principally concerned the concept limiting the scope of a lawyer's representation to avoid concurrent conflicts of interest, interpreted Disciplinary Rule (DR) 5-105, the predecessor to Rule 1.7. DR 5-105 and Rule 1.7 differ in one respect. DR 5-105(A) provided that "[a] lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it *would be likely to* involve the lawyer in representing differing interests." (emphasis added) Rule 1.7, by contrast, provides that a conflict waiver is only necessary if a reasonable

2

the lawyer could avoid the conflict by limiting the scope of the representation to avoid seeking discovery from the other client. The Committee explained that although the "adversity is less direct" than where litigating against a current client, "'it will . . . frequently be the case that a lawyer's taking discovery, whether testimonial or documentary, on behalf of one client, of a third party who is also a client, will present such direct adverseness, so as to be disqualifying under Rule 1.7(a).'" Although both opinions implied that there are circumstances where it is not a conflict of interest to seek discovery from a current client, neither opinion identified where to draw the line.

In contrast, California State Bar Formal Op. 2011-182 (Jan. 2011) concluded that service of a discovery subpoena on a current client invariably entails direct adversity. This opinion stated: "Having defined 'adverse' as 'potential injury,' we are led to the conclusion that serving any type of third-party discovery on a current client is adverse and would violate an attorney's duty of loyalty." The opinion reasoned that "discovery is coercion" and that serving discovery on one client "may affect the quality of an attorney's services to the client seeking discovery, resulting in a diminution in the vigor of the attorney's discovery demands or enforcement effort."

Other authorities suggest that whether there is a conflict of interest in this situation depends in part on the substance or nature of the information sought. Comment [6] to Rule 1.7 cautions that "a conflict may arise when a lawyer is required to cross-examine a client appearing as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client represented in the lawsuit."[4] Similarly, some courts, in the course of ruling on motions to disqualify counsel, have concluded that seeking discovery from a current client is impermissible only if the evidence is adverse to the party whom the lawyer represents in the lawsuit.[5] These decisions do not necessarily involve interpretations and applications of the relevant conflict of interest rule, however, because courts ordinarily apply decisional law that gives them discretion over whether to disqualify counsel.

Against this background, we draw several conclusions. First, issuing a subpoena to a current client to obtain testimony from that client will ordinarily give rise to a conflict of interest.

---

lawyer would conclude that "the representation *will* involve the lawyer in representing differing interests." (emphasis added)

[4] An Illinois ethics opinion concluded that examining a *former* client as a non-party witness creates a conflict of interest only when doing so is likely to result in some "concrete disadvantage" to the witness. Illinois Eth. Op. 05-01 (2006). This opinion examined whether a lawyer may represent a client in a matter in which a former client the lawyer represented in an unrelated matter would testify against the current client. It concluded that the lawyer may not cross-examine the former client unless it can be done (1) without using information relating to the prior representation to the disadvantage of the former client and (2) without materially limiting the lawyer's ability to effectively cross-examine the former client to the detriment of the current client. The Committee found that "the lawyer's attempt to discredit the testimony of the [former] client or impugn her veracity would constitute a 'concrete disadvantage.'" It is important to note, however, that the conflict of interest rule governing adversity to former clients (Rule 1.9) differs from the conflict of interest rule governing adversity to current clients (Rule 1.7).

[5] *See*, *e.g.*, *Wierzbicki v. Cty. of Rensselaer, N.Y.*, No. 14-CV-950 (GLS)(RFT), 2015 WL 4757755, at *8 (N.D.N.Y. Aug. 12, 2015) ("Concurrent representation of a party and a non-party witness constitutes a conflict of interest only if the witness is expected to give testimony adverse to the client."); *George v. City of Buffalo*, 789 F. Supp. 2d 417, 434–35 (W.D.N.Y. 2011) (noting that an "actual conflict [arises] based on witness's expected testimony adverse to attorney's client such that attorney's duty of loyalty and zealous representation to client and witness is thereby impaired"); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 870 n.6 (W.D. Mich. 2007) (granting plaintiffs' motion to disqualify defense counsel and noting in dicta that the conflicted attorney "acknowledges that his service of a subpoena on . . . a client of the firm raised a 'conflict of interest question'").

Obtaining testimony typically inconveniences the witness, involves probing a witness' recollection, and at times may involve challenging and confronting the witness, any of which a current client may reasonably perceive to be disloyal. But that said, the Committee can envision exceptional situations where subpoenaing a witness will not be directly adverse to the witness. For example, seeking discovery from a current client would not be directly adverse if that client willingly and voluntarily appears in the proceeding to give testimony that is helpful to the lawyer's other client, particularly where the testimony is discrete and straightforward (e.g., the date when a particular event happened).[6]

Second, it will ordinarily be a conflict of interest for a lawyer to seek to obtain documents via a subpoena to a current client. The production of documents in response to a subpoena very often requires an allocation of resources (time and money) which the subpoenaed party would prefer not to expend. This is all the more so when outside counsel needs to be retained, and the scope of production needs to be negotiated. Again, the Committee can envision circumstances in which service of a subpoena on a current client may not give rise to a conflict of interest – for example, where a single document (e.g., a cancelled check or an executed version of a contract) is sought.

In the exceptional cases where subpoenaing a current client will likely not give rise to a conflict of interest, because the subpoenaed client is not burdened and has no objection, the lawyer's communications with the subpoenaed client to ascertain that there is no conflict of interest will, as a practical matter, be substantially similar to the communication in which the lawyer seeks and obtains the client's informed consent (discussed below). Therefore, as a matter of prudence, a lawyer would be well advised to regard all of these situations as involving a conflict of interest.

### III. Considerations When Evaluating Conflicts Posed by Subpoenas Targeted at Clients

A number of additional ethical considerations arise from the foregoing analysis: (a) the necessity for lawyers to run conflict checks prior to serving a subpoena; (b) the potential need to decline or limit a representation, or to obtain informed consent, if a lawyer knows before being retained that subpoenaing a current client may be necessary; and (c) the retention of "conflicts counsel" to avoid the need to withdraw, or the risk of disqualification, when a lawyer learns during the course of a litigation of the need to subpoena another current client. *See* Rule 1.16. This Opinion addresses each in turn.

#### A. Conflict Checks

Rule 1.10(e) requires law firms to maintain records to perform conflict checks when: (1) the firm represents a new client; (2) the firm represents an existing client in a new matter; (3) the firm hires or associates with another lawyer; or (4) an additional party is named or appears in a pending matter. Service of a subpoena is not mentioned in the rule. However, because subpoenaing clients can give rise to a conflict of interest, attorneys should implement their conflict checking procedures before preparing and serving such subpoena. Although failure to

---

[6] Likewise, there is not necessarily a conflict of interest where the current client is called as a witness by the opposing party, and the lawyer's cross-examination is not designed to discredit the client and is not otherwise adverse.

do so would not be a violation of the precise terms of Rule 1.10(e), subpoenaing an existing client may result in a violation of Rule 1.7 and therefore implementing conflict checking procedures before doing so would be prudent and helpful.

      B.      <u>Declining or Limiting a Representation at the Outset of Litigation</u>

In some instances, even before counsel is retained, it will be apparent that particular non-parties will be subject to discovery. In those instances, the attorney should run a conflict check not just for any adverse parties in a litigation, but also for any non-parties from whom it is anticipated that discovery will be sought. At that point, in order to undertake the representation, either informed consent must be obtained from *both* clients or the scope of the representation must be limited as set forth below to exclude the lawyer's obtaining discovery from the other client. Otherwise, the attorney must decline the representation. *See* ABA Formal Op. 92-367.

If the witness client will not consent to the discovery, an alternative to withdrawal may be to limit the scope of the representation of the litigant client. This Committee has previously opined that where a representation entails adversity to a current client who is a potential witness, the representation may be limited "as long as the lawyer's continuing representation of the client is not so restricted that it renders her counsel inadequate and the client for whom the lawyer will provide the limited representation consents to the limitation." NYCBA Formal Op. 2001-3. Limiting the scope of the representation may entail the retention of conflicts counsel (discussed below) to seek discovery from the other current client, or, if the discovery is not significant, forgoing the discovery.

In obtaining consent from the litigant client to limit the representation, "the lawyer must adequately disclose the limitations on the scope of the engagement and the matters that will be excluded." *Id.* Counsel must also explain the reasonably foreseeable consequences of the limitation, including the risk that separate counsel may need to be retained, which could result in additional expense and delay or complicate the rendition of legal services. *Id.* This Committee further noted that the terms of the limited engagement should be memorialized in writing as soon as possible, and in detail. *Id.* at *4.

As this Committee noted in NYCBA Formal Op. 2005-05 (2005), an attorney may seek advance conflict waivers from a client or prospective client to waive future conflicts. This may include an agreement in advance to consent to be subpoenaed as a non-party witness by the lawyer or law firm in its representation of other clients in unrelated lawsuits. The circumstances of the potential conflict must be "sufficiently described" in such a waiver, although the identity of the other client or all of the details of the potential future conflict need not necessarily be included. *Id.* But the more general the advance waiver language is, the less likely the waiver is to be enforced, especially if the client is not a sophisticated frequent user of legal services. In determining the enforceability of prospective waivers, "reviewing courts try to ascertain whether the client was reasonably informed about the future matter." NYCBA Formal Op. 2004-02, n.14 (2004) (citing authorities).

### C. Withdrawal and the Retention of Conflicts Counsel During the Course of Litigation

If the need to subpoena another current client is not recognized and addressed at the outset and only arises after the representation is underway, the situation is a difficult one. Although far from desirable, withdrawal pursuant to Rule 1.16 may be an option. *See* ABA Formal Op. 92-367 (Oct. 1992). But the question of which representation must be terminated to avoid the conflict of interest can be difficult to resolve. *Id.* ("Priority in time of the commencement of the representation is ordinarily likely to be given primary weight, [however] the balance of equities, in terms of prejudice resulting from withdrawal, may well tilt strongly the other way."). Clients are understandably chagrined to lose their counsel midway through a representation, and firms never like to give up work.

An attorney need not necessarily resort to the drastic step of withdrawal. The ABA has noted that "a sufficient solution may be to provide for other counsel, also representing the litigation client, to deal with the client-witness . . . ." *Id.* In other words, with the litigation client's consent, another lawyer may be retained for the limited purpose of taking discovery from the client-witness. *Id.* Counsel must be mindful of ethical constraints on the permissible interactions with conflicts counsel. Counsel may not pass along to conflicts counsel an already drafted subpoena, or otherwise direct or influence conflicts counsel from behind the scenes. As this Committee has previously noted, in the context of conflicts counsel brought in to litigate claims against a current client, while "there is no prohibition against the lawyer's recommending or otherwise assisting her client in retaining other counsel . . . [t]he lawyer may not assist, or otherwise participate with, new counsel in litigating against her own client. This means that the lawyer may not instruct the other lawyer or strategize on the best way to proceed." NYCBA Formal Op. 2001-3 (2001). The conflicted lawyer may, however, provide copies to conflicts counsel of generally relevant information developed in the case, so long as the information is not segregated or otherwise targeted at the other client. *Id.* ("[T]he overarching and guiding principle should be neutrality toward the firm's other client…[T]he original law firm may not in any way 'selectively' disclose or segregate for review or otherwise identify documents that would be 'particularly relevant' to claims against the other client").

**CONCLUSION:**

Subpoenaing a current client on behalf of another current client ordinarily creates a conflict of interest that requires that the attorney obtain informed written consent from both clients. Therefore, an attorney should run a conflict check prior to preparing and issuing a subpoena. Counsel should consider whether limiting the scope of a representation or obtaining informed consent in advance could address any conflict issues at the outset of a representation; in the event these prophylactic measures cannot avoid the conflict, the prospective representation must be declined. Finally, if the need to subpoena a current client arises during the course of a pre-existing attorney-client relationship, counsel may have to withdraw from the representation or make arrangements for the retention of conflicts counsel to conduct the discovery.